The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 37-year-old married male high school graduate with a B.A. Degree in religion who sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on April 28, 1990, while driving a tanker when the tanker overturned injuring plaintiff.
2. Prior to beginning work with defendant-employer in January 1990 as a tanker driver, plaintiff's prior work experience consisted of various jobs involving sales, working as a pastor, and previous experience as a long-distance truck driver between 1986 and 1989.
3. As a result of the accident, plaintiff sustained injuries that required him to be seen at Catawba Memorial Hospital. Thereafter, plaintiff came under the care of Dr. Darden on May 8, 1990, and was diagnosed as a having a cervical and lumbar strain. Plaintiff was treated conservatively with physical therapy and medications. Plaintiff's cervical strain resolved; however, he continued to receive treatment for low back pain.
4. Dr. Darden subsequently referred plaintiff to the Rehab Center where plaintiff participated in a multi-rehabilitation program at the Rehab Center under the direction of Dr. Demas. During his enrollment at the rehabilitation program from October 1 through November 14, 1990, plaintiff's condition improved. His release from the Rehab Center after a functional capacities evaluation revealed that plaintiff was capable of engaging in an eight-hour work day; however, lifting restrictions were imposed on plaintiff limiting him to the performance of work within the light category requiring on a frequent basis lifting no more than 20 pounds.
5. Plaintiff's employment with defendant-employer as a tanker driver required him to drive a tanker hauling gasoline. In this position, plaintiff was also responsible for loading and unloading the gasoline into the tanker. The loading and unloading of the gasoline required plaintiff to plug his tanker into a loading rack and swing a loading arm that weighed approximately 35-40 pounds to the tank. Plaintiff would then load the tanker with gasoline. When plaintiff had driven to his destination, he would have to take a four inch in diameter by 20 foot long hose from the tanker and attach it with fittings that weighed between three and twelve pounds, and hook up the hose to the racks for the emptying of the tanker. Plaintiff would then have to unhook and roll up the hose.
6. Following his release from the Rehab Center, plaintiff continued to be treated by Dr. Darden who ultimately released plaintiff on January 8, 1991, with a ten percent permanent partial disability to the back.
7. As a result of the injury by accident giving rise to this claim, plaintiff is unable to return to his previous employment with defendant-employer as a tanker driver or his previous employment with Brown Transportation as a long-distance driver, as said positions are not considered light employment but medium employment due to the lifting, pushing, pulling, and climbing required by those types of truck driving positions. Although plaintiff did not possess the physical capacity to return to his prior employment with defendant-employer, plaintiff did contact defendant-employer in late 1990 regarding a return to employment. However, defendant-employer refused to consider rehiring plaintiff because he had signed a letter of resignation on May 3, 1990, a few days after the accident stating his intention to resign his position with defendant-employer, when he was released by the doctor as he felt he was no longer able to drive a tanker. This letter of resignation was signed prior to the plaintiff reaching maximum medical improvement and being released from medical treatment and was not effective at the time plaintiff contacted defendant-employer regarding a return to work.
8. In addition to contacting defendant-employer, after being released to return to work by Dr. Darden, plaintiff searched for jobs within his physical capacity. Plaintiff registered with the Employment Security Commission and looked for jobs in the areas of being a school teacher, a state or county employee, a pastor at a church, a prison guard, a case worker and an interviewer.
9. Plaintiff did subsequently obtain employment as a substitute teaching for Gaston County Schools on occasion earning $160.00 after his release to return to work in January 1991; and on April 7, 1991, plaintiff obtained a position as the pastor of Temple Baptist Church. Plaintiff continues to hold that position. In 1991 plaintiff earned $8,769.94; and in 1992 and 1993, plaintiff earned $12,000.56 each year.
10. Prior to his injury in April 1990, plaintiff had previous light work experience in sales and as a pastor. While so employed, plaintiff did not earn more than $200.00 per week. While employed with Brown Transportation as a long distance truck driver and with defendant-employer as a tanker driver, plaintiff earned more than he earned in his prior light types of employment and in his present position as a pastor; however, plaintiff's prior employment as a long-distance truck driver and tanker driver was considered medium work. While plaintiff may be capable of engaging in truck driving activities of a lighter nature with some possible seat modifications, defendants have not offered plaintiff a truck driving job within his capacity or shown that such jobs are available and that plaintiff could obtain such a position which would pay more than he is presently earning as a pastor.
11. The Form 21 Agreement approved by the Industrial Commission on August 9, 1990, notes that plaintiff's average weekly wage is subject to verification. The Form 22 which has been submitted into evidence reveals that plaintiff's average weekly wage on or about April 28, 1990, was $477.19, resulting in a compensation rate of $318.14. Therefore, the undersigned finds that plaintiff's average weekly wage on or about April 28, 1990, was $477.19.
12. Plaintiff has sustained a loss of earning capacity as a result of the injury by accident giving rise hereto, and his loss of earnings after April 21, 1991, resulted from said injury.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the injury by accident giving rise to this claim, following his return to work after January 8, 1991, plaintiff remained partially disabled and is entitled to receive partial disability compensation benefits equal to two-thirds the difference between his average weekly wages on or about April 28, 1990, ($477.19) and the average weekly wage plaintiff was able to earn after his return to work on April 7, 1991, for a period of 250 and 6/7's weeks, subject to a change of condition, return to work or further Order of the Commission and also subject to a credit awarded to defendants for two and 2/7's weeks of temporary total disability compensation benefits paid to plaintiff during April 1991 and to a credit awarded defendants for $160.00, plaintiff's earnings as a substitute teaching during 1991. N.C. G.S. § 97-30; G.S. § 97-2 (5).
2. Plaintiff is not entitled to attorney's fees as this case was not defended without reasonable cause. N.C.G.S. § 97-88.1.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent said treatment tends to effect a cure, to provide relief, or to lessen his period of disability. N.C.G.S. § 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary partial disability compensation benefits to plaintiff at the rate of two-thirds the difference between plaintiff's average weekly wage on or about April 28, 1990, and the average weekly wage plaintiff was able to earn after April 7, 1991, for a period of 250 and 6/7's weeks, subject to a credit awarded to defendants for 2 and 2/7's weeks of temporary total disability compensation benefits paid to plaintiff during April 1991 and for $160.00 paid to plaintiff pursuant to employment as a substitute teacher during 1991. That portion of said compensation which has accrued shall be paid in a lump sum subject to an attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident, when bills for same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. A reasonable attorney's fee of 25 percent of all compensation awarded herein is hereby approved for plaintiff's counsel, the accrued portion of the fee shall be deducted from the accrued benefits and paid directly to counsel for plaintiff, thereafter, defendants shall forward every fourth check of compensation benefits to plaintiff's counsel until plaintiff is no longer entitled to compensation benefits.
4. Defendants shall pay expert witness fees in the amounts of $250.00 to Dr. Demas, $250.00 to Dr. Darden, $250.00 to Dr. DuPuy, and $100.00 to Mr. Haney.
5. Defendants shall pay the costs.
 S/ _________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ J. RANDOLPH WARD COMMISSIONER
CMV/CNP/tmd 4/12/95